**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

UNITED STATES OF AMERICA

Plaintiff,

vs. No. CR 21-0297 JB

DEAN GROSS,

Defendant.

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** comes before the Court on: (i) the parties' Joint Proposed Jury Instructions, filed December 14, 2021 (Doc. 62)("Jury Instructions"); and (ii) the Defendant's Objections to Government's Jury Instruction, filed December 16, 2021 (Doc. 71)("Objections"). The Court held a hearing on December 14, 2021. See Notice of Pretrial Conference, filed November 23, 2021 (Doc. 43). Defendant Dean Gross objects to the Government's Requested Instruction No. 11. See Jury Instructions, Instruction No. 11, at 22. The primary issue is whether the Court should instruct the jury that court-ordered residence at a halfway house constitutes custody for 18 U.S.C. § 751(a)'s purposes. The Court concludes that, based on United States v. Sack, 379 F.3d 1177, 1179-81 (10th Cir. 2004), the Court should include an instruction that a halfway house constitutes custody. Consequently, the Court will overrule the Objections.

**FACTUAL BACKGROUND**

The Court takes its facts from the Criminal Complaint, filed January 27, 2021 (Doc. 1)("Complaint"), and the Superseding Indictment, filed December 8, 2021 (Doc. 49)("Indictment"). The Court recognizes that, because the Court draws facts from the Complaint and Indictment, these facts largely reflect the United States' version of events. On January 23,

2021, United States Deputy Marshal Jimmie Glisson conducted an enforcement operation to locate and to apprehend "numerous persons" who "had violated the terms of their respective supervision, resulting in the issuance of a State of New Mexico Arrest Order/Warrant." Complaint ¶ 1, at 2. One subject, Destany Watkins, had an outstanding arrest warrant. See Complaint ¶ 2, at 3. After receiving information that Watkins was residing at an address in Albuquerque, New Mexico, Glisson, along with several other officers, went to the Albuquerque address. See Complaint ¶ 3, at 3. At the residence, Glisson noticed two locations where a person could be present: (i) a main structure; and (ii) a travel trailer adjacent to the main structure. See Complaint ¶¶ 3-4, at 3. When the officers arrived at the residence, Gross was present and in the trailer. See Complaint ¶ 5, at 3. Glisson observed Officer Aubyn Rhoades inform Gross that the officers were looking for Watkins. See Complaint ¶ 5, at 3. Gross stated that he did not know Watkins. See Complaint ¶ 5, at 3. During Rhoades and Gross' conversation, Gross "stated that there was no one else inside the travel trailer." Complaint ¶ 5, at 4. Glisson observed, however, another person in the trailer. See Complaint ¶ 6, at 4. Officers again asked Gross who else was in the trailer, and Gross continued to deny that there was anyone else in the trailer. See Complaint ¶ 6, at 4. Eventually, Gross exited the trailer, but officers continued to observe the trailer. See Complaint ¶ 8, at 4. Glisson informed Gross that he had a warrant for Watkins' arrest and told Gross that, "under Federal Law, anyone lying to a federal officer could be charged with a federal crime." Complaint ¶ 9, at 4. Gross continued to deny knowing Watkins. See Complaint ¶ 10, at 4. While officers escorted Gross to the main residence, Rhoades began communicating with someone in the travel trailer. See Complaint ¶¶ 10-11, at 4-5. Shortly thereafter, Watkins exited the travel trailer, and the officers took her into custody. See Complaint ¶ 11, at 5.

**PROCEDURAL BACKGROUND**

On January 27, 2021, Plaintiff United States of America filed the Complaint against Gross. See Complaint at 1. Officers arrested Gross on February 22, 2021. See Arrest Warrant Returned Executed, filed February 22, 2021 (Doc. 4). On February 25, 2021, the Honorable John F. Robbenhaar, United States Magistrate Judge for the United States District Court in the District of New Mexico, entered an Order setting Gross' release conditions. See Order Setting Conditions of Release, filed February 25, 2021 (Doc. 15)("Release Conditions"). The Release Conditions state:

> The defendant is placed in the custody of: La Pasada Halfway House . . . who agrees to (a) supervise the defendant, (b) use every effort to assure the defendant's appearance at all court proceedings, and (c) notify the court immediately if the defendant violates a condition of release or is no longer in the custodian's custody.

Release Conditions ¶ 6, at 2. The Release Conditions further state: "The defendant is ORDERED released after processing." Release Conditions at 3.

On April 21, 2021, La Pasada notified Pretrial Services that Gross left La Pasada without permission and did not return. See 2nd Amended Petition for Action on Conditions of Pretrial Release, filed August 20, 2021 (Doc. 28)("Amended Petition"). On April 21, 2021, "Pretrial contacted the defendant and instructed him to turn himself in to law enforcement." Amended Petition at 2. Federal officers again arrested Gross on August 30, 2021. See Arrest of Dean Gross, filed August 30, 2021 (text only entry). On December 8, 2021, a federal Grand Jury charged Gross with: (i) Count 1, making a false statement to a federal officer by lying about the presence of Watkins in his trailer, in violation of 18 U.S.C. § 1001(a)(2); and (ii) Count 2, knowingly escaping from La Pasada, an institution for which he was in custody pursuant to Magistrate Judge Robbenhaar's Order, in violation of 18 U.S.C. § 751(a). See Indictment at 1-2.

On December 14, 2021, the parties filed their proposed Jury Instructions. See Jury

Instructions at 1.  Gross objects to the Government's Requested Instruction No. 11.  See Jury Instructions, Instruction No. 11, at 22.  The Government's Requested Instruction No. 11 reads:

> The defendant, Dean Gross, is charged in count 2 with a violation of 18 U.S.C. section 751(a).
>
> This law makes it a crime to escape from a lawfully imposed custodial situation.
>
> To find the defendant guilty of this crime you must be convinced that the government has proved each of the following beyond a reasonable doubt:
>
> *First*: the defendant was in federal custody under or by virtue of any process issued under the laws of the United States by any court, judge, or magistrate judge, pursuant to a lawful arrest on a felony charge;
>
> *Second*: the defendant departed without permission; and
>
> *Third*: the defendant knew he did not have permission to leave federal custody.
>
> A person may be "in federal custody" even though not under constant supervision by guards as long as some restraint remains on his or her freedom.
>
> Court-ordered residence at a halfway house constitutes custody.

Jury Instructions, Instruction No. 11, at 22.  The primary issue with respect to the Instruction is whether the Court should instruct the jury that "Court-ordered residence at a halfway house constitutes custody."  Jury Instructions, Instruction No. 11, at 22.  The United States contends that such instruction is proper, because the United States Court of Appeals for the Tenth Circuit in United States v. Sack, 379 F.3d at 1179-81, "explicitly held that a pretrial resident of La Pasada Halfway House who was placed there by order of the district court 'was in custody for the purposes of [18 U.S.C.] § 751 when he left the halfway house.'"  Jury Instructions, Instruction No. 11, at 22 (quoting United States v. Sack, 379 F.3d at 1181.  The United States contends that this Instruction

is proper, "because in light of *Sack*, the question whether court-ordered residence at a halfway house constitutes custody is a question of law for the judge, not a question of fact for the jury." Jury Instructions, Instruction No. 11, at 23. First, Gross objects to the United States' proposed inclusion of two sentences that explain that residence at a halfway house constitutes custody, on the basis that United States v. Sack was wrongly decided, and "the Tenth Circuit Pattern Jury Instruction 2.35 contains the correct elements of escape." See Objections at 1. Second, Gross objects to the jury instruction including additional language beyond the elements of the offense. See Objections at 2.

**ANALYSIS**

The escape statute, 18 U.S.C. § 751 states:

> Whoever escapes or attempts to escape from the custody of the Attorney General or his authorized representative, or from any institution or facility in which he is confined by direction of the Attorney General, or from **any custody under or by virtue of any process issued under the laws of the United States by any court, judge, or magistrate judge, or from the custody of an officer or employee of the United States pursuant to lawful arrest**, shall, if the custody or confinement is by virtue of an arrest on a charge of felony, or conviction of any offense, be fined under this title or imprisoned not more than five years, or both; or if the custody or confinement is for extradition, or for exclusion or expulsion proceedings under the immigration laws, or by virtue of an arrest or charge of or for a misdemeanor, and prior to conviction, be fined under this title or imprisoned not more than one year, or both.

18 U.S.C. § 751(a)(emphasis added). The United States relies on United States v. Sack to contend that a jury instruction stating that a halfway house constitutes custody for 18 U.S.C. § 751's purposes is proper. See Jury Instructions, Instruction No. 11, at 22; United States v. Sack, 379 F.3d at 1181. In United States v. Sack, the district court ordered the defendant, Courtney David Sack, to reside at a halfway house after he was arrested for bank robbery. See 379 F.3d at 1177. One day, Sack failed to return to the halfway house, and the United States charged Sack with both

bank robbery and escape. See 379 F.3d at 1177-78.  Sack moved to dismiss the escape charge, but the district court denied his motion.  See 379 F.3d at 1178.  Sack pled guilty to the charge, but reserved his right to appeal the district court's denial of his motion to dismiss the escape charge. See 379 F.3d at 1178.  Sack appealed the motion's denial to the Tenth Circuit, arguing that, when he was at the halfway house, he was not in custody for purposes of the escape statute, 18 U.S.C. § 751, because he was not in the Attorney General's custody, which he argues the statute requires. See 379 F.3d at 1178.  First, the Tenth Circuit notes that, in United States v. Swanson, 253 F.3d 1220 (10th Cir. 2001), the Tenth Circuit concludes that court-ordered residence at a halfway house constitutes custody for the Sentencing Guidelines purposes.  United States v. Swanson, 253 F.3d at 1223-24.  Moreover, the Tenth Circuit considers its previous ruling in United States v. Depew, 977 F.2d 11412 (10th Cir. 1992), which concludes that

> "the statute applies only to those escapees who were originally confined or in custody under federal law in the sense that they were held in the custody of the Attorney General or *in custody by an order or process issued under the laws of the United States by a competent court or official*."

United States v. Sack, 379 F.3d at 1179 (quoting United States v. Depew, 977 F.2d at 1413)(emphasis in United States v. Sack only).  The Tenth Circuit also notes that, for the escape statute's purposes, custody may be minimal or constructive, and does not need to include physical restraint.  See United States v. Sack, 379 F.3d at 1179 (citing United States v. Depew, 977 F.2d at 1413).  The Tenth Circuit analyzes and rejects Sack's argument that custody, for § 751's purposes, requires that a person be in the Attorney General's custody, because the Tenth Circuit concludes that the "or" in § 751 is disjunctive, which makes the beginning of the statute distinct from the preceding phrase.  See 379 F.3d at 1181.  The Tenth Circuit concludes, therefore, that it is not necessary for a defendant to be in the Attorney General's custody to be charged with escape.

United States v. Sack, 379 F.3d at 1181. The Tenth Circuit ultimately states: "Because Sack was in the custody of the halfway house as a result of an order of the district court, we conclude he was in custody under § 751." 379 F.3d at 1179. See United States v. Mike, 596 F. App'x 692, 695 (10th Cir. 2014)(unpublished)[1](restating United States v. Sack's holding that a halfway house constitutes custody for § 751's purposes and concluding that "Sack was rightly decided"); United States v. Evans, 159 F.3d 908, 910 (4th Cir. 1998)(stating that the United States must prove § 751's custody requirement by demonstrating that that the defendant was: (i) in the Attorney General's custody; (ii) confined in an institution at the Attorney General's direction; (iii) "in custody under or by virtue of any process issued under the laws of the United States by any court, judge, or magistrate"; or (iv) in the custody of an officer or employee of the United States pursuant to a lawful arrest); United States v. Goad, 788 F.3d 873, 876 (8th Cir. 2015)(concluding that "confinement need only be 'under or by virtue of any process issued' by a judge or court under federal law" to constitute custody for § 751's purposes)(quoting 18 U.S.C. § 751(a)); United States v. Kelly, 368 F. App'x 194, 197 (2d Cir. 2010)(upholding a defendant's conviction pursuant to 18 U.S.C. § 751 after the defendant escaped from a halfway house); United States v. Edelman, 5:09-

---

[1]United States v. Mike is an unpublished opinion, but the Court can rely on an unpublished United States Court of Appeals for the Tenth Circuit opinion to the extent its reasoned analysis is persuasive in the case before it. See 10th Cir. R. 32.1(A)("Unpublished decisions are not precedential, but may be cited for their persuasive value."). The Tenth Circuit has stated:

> In this circuit, unpublished orders are not binding precedent, . . . and we have generally determined that citation to unpublished opinions is not favored. However, if an unpublished opinion or order and judgment has persuasive value with respect to a material issue in a case and would assist the court in its disposition, we allow a citation to that decision.

United States v. Austin, 426 F.3d 1266, 1274 (10th Cir. 2005). The Court concludes that United States v. Mike has persuasive value with respect to a material issue and will assist the Court in its disposition of this MOO.

CR-40(FJS), 2010 WL 11463981 at *2 (N.D.N.Y. May 24, 2010)(Scullin, J.)("It is now well-settled that a defendant's placement in a halfway house as part of his supervised release constitutes 'custody' or 'confinement' for purposes of the escape statute.")(citing United States v. Sack, 379 F.3d at 1178-81)(no citation for quotation).

The Tenth Circuit's position is, however, not universal. In United States v. Baxley, 982 F.2d 1265 (9th Cir. 1992), the United States Court of Appeals for the Ninth Circuit concludes that the defendant, Baxley, was not in custody for § 751's purposes. See United States v. Baxley, 982 F.2d at 1269. Baxley was released after his arrest, and one of his release conditions required him to reside at a halfway house. See 982 F.2d at 1269. The Ninth Circuit concludes that Baxley was not in custody for § 751's purposes, because "of the circumstances of his residence at the half-way house," which more closely resembles a conditional release from incarceration, such as probation, than custodial incarceration. United States v. Baxley, 982 F.2d at 1270. Moreover, the Ninth Circuit relies on the district court's "Order Setting Conditions of Release" to conclude that the Order "clearly indicates that Baxley was not intended to be 'in custody' while in residence" at the halfway house. See United States v. Baxley, 982 F.2d at 1270 (no citation for quotation). Namely, the Order contained a variety of release conditions, and the district court judge "checked only the boxes that required Baxley to engage in particular actions.[] The district judge did *not* check the box that stated that 'the defendant is placed in the custody of' a given institution." United States v. Baxley, 982 F.2d at 1270 (no citation for quotation)(footnote omitted)(emphasis in original). Consequently, the Ninth Circuit concludes that the district court Order's requirement that Baxley reside in a halfway house did not render him in custody for § 751's purposes. See 982 F.2d at 1270. Moreover, in United States v. Burke, 790 F. Supp. 2d 1272 (E.D. Wa. 2011)(aff'd)(Shea, J.). the Honorable Edward F. Shea, United States District Judge for the Eastern District of

Washington, concludes that the Tenth Circuit interpreted "custody too broadly for purposes of § 751(a)." United States v. Burke, 790 F. Supp. 2d at 1275 (Shea, J.).  Judge Shea states: "An individual who is on release, either pretrial or post-imprisonment, enjoys much more liberty than an individual who is in traditional custody, even if that individual must reside in a halfway house." 790 F. Supp. 2d at 1275.  The Ninth Circuit affirmed Judge Shea's decision in United States v. Burke, 694 F.3d 1062 (9th Cir. 2012), relying on United States v. Baxley, and concluding that the defendant was not in custody when he was in a residential reentry center while on supervised release.  See United States v. Burke, 694 F.3d at 1063-65 ("Like an individual on probation, Burke was conditionally released from incarceration; his failure to return to [Spokane Residential Reentry Center] was a violation of his release conditions punishable by revocation of release, not an escape from 'custody' within the meaning of § 751(a).")(no citation for quotation).

      Here, Gross objects to the Government's Requested Instruction No. 11 "on the basis that United States v. Sack . . . was wrongly decided." Objections at 1.  Gross asks that the Court use the unmodified version of the Tenth Circuit Pattern Criminal Jury Instructions 2.35, which does not modify the first element or add the two sentences: "A person may be 'in federal custody' even though not under constant supervision by guards as long as some restraint remains on his or her freedom," and "Court-ordered residence at a halfway house constitutes custody." Objections at 1. The Court agrees with the United States that, pursuant to United States v. Sack, a halfway house constitutes custody for § 751's purposes.  United States v. Sack, 379 F.3d at 1181.  The Court notes, however, that the United States must prove § 751's custody element beyond a reasonable doubt. The Tenth Circuit Pattern Criminal Jury Instructions 2.35, unmodified, state that the United States must prove that "the defendant was in federal custody pursuant to a lawful arrest on a felony [misdemeanor] charge at an institution or facility where the defendant was confined by direction

of the Attorney General for conviction of an offense." Tenth Circuit Pattern Criminal Jury Instructions 2.35 (2021 Edition). To comply with the United States' burden and the Tenth Circuit caselaw in United States v. Sack, the Court will instruct preliminarily the jury using the Government's Requested Instruction No. 11 for § 751's elements, but the Court will omit the two subsequent sentences. Then, in its final instructions, the Court will instruct the jury with the Government's Requested Instruction No. 11 as to the elements, and the Court will also include the Government's additional sentences providing: "A person may be in 'federal custody' even though not under constant supervision by guards as long as some restraint remains on his or her freedom," and "Court-ordered residence at a halfway house constitutes custody." Jury Instructions, Instruction No. 11, at 22.

The Court acknowledges that Gross objects to the Tenth Circuit's conclusion in United States v. Sack that a halfway house constitutes custody for § 751's purposes. See Objections at 1 (citing United States v. Sack, 379 F.3d at 1181). While other courts have taken positions in opposition to the Tenth Circuit's, the Tenth Circuit's holding in United States v. Sack binds the Court. See United States v. Sack, 379 F.3d at 1179. Consequently, the Court concludes that this procedure is the best way to ensure that the jury understands that the United States still must meet its burden of proving the first element -- that Gross was in custody -- while clarifying that, as a matter of law, a halfway house constitutes custody for § 751's purposes.

**IT IS ORDERED** that the Defendant's Objections to Government's Jury Instruction, filed December 16, 2021 (Doc. 71), are overruled.

UNITED STATES DISTRICT JUDGE

*Counsel:*

Fred J. Federici
Acting United States Attorney
Linda Mott
Stephen A. White
Assistant United States Attorneys
United States Attorney's Office
Albuquerque, New Mexico

*Attorneys for the Plaintiff*

Margaret Katze
Federal Public Defender
Dennis J. Candelaria
Buck T. Glanz
Assistant Federal Public Defender
Federal Public Defender's Office
Albuquerque, New Mexico

*Attorneys for the Defendant*