IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

vs.                                                                                                                          No. CR 21-0297 JB

DEAN GROSS,

    Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the United States' Opposed Eighth Motion in Limine and Notice of Intent to Admit Evidence Under Federal Rule of Evidence 404(b)(2) and as *Res Gestae* Evidence, filed December 11, 2012 (Doc. 60)("Motion"). The Court held a hearing on December 21, 2021. See Notice of Motion Hearing, filed December 16, 2021 (Doc. 72). The primary issue is whether Plaintiff United States of America may introduce evidence of an alleged shootout in Socorro, New Mexico, between Defendant Dean Gross and police pursuant to rule 404(b) of the Federal Rules of Evidence or as res gestae evidence, because the evidence is not unduly prejudicial to Gross. The Court will allow the United States to introduce limited testimony about the shootout to demonstrate that Gross violently resisted arrest by police, and that this could demonstrate evidence of Gross' consciousness of guilt. The Court will, therefore, grant in part and deny in part the United States' Motion.

    The Court takes its facts from the Criminal Complaint, filed January 27, 2021 (Doc. 1)("Complaint"), and the Superseding Indictment, filed December 8, 2021 (Doc. 49)("Indictment"). The Court recognizes that, because the Court draws facts from the Complaint and Indictment, these facts largely reflect the United States' version of events. On January 23,

2021, United States Deputy Marshal Jimmie Glisson conducted an enforcement operation to locate and to apprehend "numerous persons" who "had violated the terms of their respective supervision, resulting in the issuance of a State of New Mexico Arrest Order/Warrant." Complaint ¶ 1, at 2. One subject, Destany Watkins, had an outstanding arrest warrant. See Complaint ¶ 2, at 3. After receiving information that Watkins was residing at an address in Albuquerque, New Mexico, Glisson, along with several other officers, went to the Albuquerque address. See Complaint ¶ 3, at 3. At the residence, Glisson noticed two locations where a person could be present: (i) a main structure; and (ii) a travel trailer adjacent to the main structure. See Complaint ¶¶ 3-4, at 3. When the officers arrived at the residence, Gross was in the trailer. See Complaint ¶ 5, at 3. Glisson observed Officer Aubyn Rhoades inform Gross that the officers were looking for Watkins. See Complaint ¶ 5, at 3. Gross stated that he did not know Watkins. See Complaint ¶ 5, at 3. During Gross and Rhoades' conversation, Gross "stated that there was no one else inside the travel trailer." Complaint ¶ 5, at 4. Glisson observed, however, another person in the trailer. See Complaint ¶ 6, at 4. Officers again asked Gross who else was in the trailer, and Gross continued to deny that there was anyone else in the trailer. See Complaint ¶ 6, at 4. Eventually, Gross exited the trailer, but officers continued to observe the trailer. See Complaint ¶ 8, at 4. Glisson told Gross that he had a warrant for Watkins' arrest and told Gross that, "under Federal Law, anyone lying to a federal officer could be charged with a federal crime." Complaint ¶ 9, at 4. Gross continued to deny knowing Watkins. See Complaint ¶ 10, at 4. While officers escorted Gross to the main residence, Rhoades began communicating with someone in the travel trailer. See Complaint ¶¶ 10-11, at 4-5. Shortly thereafter, Watkins exited the travel trailer, and the officers took her into custody. See Complaint ¶ 11, at 5.

On January 27, 2021, the United States filed the Complaint against Gross. See Complaint

at 1. Officers arrested Gross on February 22, 2021. See Arrest Warrant Returned Executed, filed February 22, 2021 (Doc. 4). On February 25, 2021, the Honorable John F. Robbenhaar, United States Magistrate Judge for the United States District Court in the District of New Mexico, entered an Order setting Gross' release conditions. See Order Setting Conditions of Release, filed February 25, 2021 (Doc. 15)("Release Conditions"). The Release Conditions state:

> The defendant is placed in the custody of: La Pasada Halfway House . . . who agrees to (a) supervise the defendant, (b) use every effort to assure the defendant's appearance at all court proceedings, and (c) notify the court immediately if the defendant violates a condition of release or is no longer in the custodian's custody.

Release Conditions ¶ 6, at 2. On April 21, 2021, La Pasada notified Pretrial Services that Gross left La Pasada without permission and did not return. See 2nd Amended Petition for Action on Conditions of Pretrial Release, filed August 20, 2021 (Doc. 28)("Amended Petition"). Federal officers again arrested Gross on August 30, 2021. See Arrest of Dean Gross, filed August 30, 2021 (text only entry). On December 8, 2021, a federal Grand Jury charged Gross with: (i) Count 1, making a false statement to a federal officer by lying about Watkins' presence in his trailer, in violation of 18 U.S.C. § 1001(a)(2); and (ii) Count 2, knowingly escaping from La Pasada, an institution for which he was in custody, in violation of 18 U.S.C. § 751(a). See Indictment at 1-2.

On December 11, 2021, the United States filed its Eighth Motion in Limine to introduce evidence of a shootout between Gross and police in Socorro. See Motion at 1. The United States contends that evidence of the shooting helps to show that Mr. Gross had a motive and intent to evade capture, knew that he did not have permission to be outside of federal custody, and had a motive to leave federal custody to reunite with Watkins, who was also present at the shooting. See Motion at 1. Alternatively, the United States argues that the evidence of the shooting is intrinsic evidence that is intertwined inextricably with the escape charge and is admissible on that basis. See Motion at 1. The United States notes that, in proving Gross escaped from custody in violation

of 18 U.S.C. § 751(a), it must establish that: (i) Gross left La Pasada without permission; and (ii) Gross knew he did not have permission to leave La Pasada.  See Motion at 4.  The United States contends that evidence of the shootout between Gross and police "suggests that he was doing whatever he could to prevent the officers from taking him back into custody," which, "in turn, suggests that Mr. Gross knew that he was not allowed to be *out* of custody."  Motion at 4-5.  The United States argues, therefore, the evidence demonstrates that Gross knew he was supposed to be in La Pasada's custody.  See Motion at 6.  The United States notes that the evidence is not unfairly prejudicial, because it goes to motive, intent, and knowledge, and is not offered to prove that Gross acted in accordance with the character.  See Motion at 6-8.

Next, the United States contends that the proffered evidence is admissible as res gestae evidence.  See Motion at 9.  The United States notes that the crime of Escape from Custody in violation of 18 U.S.C. § 751(a) is a continuing offense until the escapee returns to custody, so Gross' actions while outside of custody relate to the element of § 751(a) regarding whether Gross knew he did not have permission to be outside of federal custody.  See Motion at 10.  Further, the United States contends that the shooting's details are necessary "to paint the full picture of this case" and inform the jury how law enforcement officers regained custody of Gross.  Motion at 10-11.

On December 17, 2021, Gross responded to the United States' Motion.  See Defendant's Response to Government's Eighth Motion in Limine, filed December 17, 2021 (Doc. 78)("Response").  Gross contends that: (i) Tenth Circuit law does not support admitting the evidence pursuant to rule 404(b)(2); (ii) the shooting evidence is independent of the Indictment's charges and, therefore, is not res gestae; and (iii) allowing the evidence will result in a mini-trial on a collateral issue.  See Response at 1.  At the outset, Gross contests the facts surrounding the

shootout, including whether he shot at police. See Response at 2. Gross also argues that the United States does not offer the evidence for a purpose that is in material dispute. See Response at 3-4.

Next, Gross argues that the United States offers evidence of the shootout only to suggest a criminal propensity, which is improper under rule 404(b). See Response at 5. Moreover, Gross contends that the fact that he engaged in the shootout does not make it any more likely that he escaped from the halfway house in the first place. See Response at 5. Further, Gross contends that the evidence is more prejudicial than probative, because jurors will infer that Gross is a "bad person" for engaging in a shootout. Response at 6. Finally, Gross argues that the shootout evidence is not res gestae evidence, because the evidence is not necessary to understand the charge in this case. See Response at 6. Gross also contends that admitting the shootout evidence will force the parties to have a mini-trial on the shootout's events, which will confuse jurors and waste judicial resources. See Response at 7.

The Court held a hearing on December 21, 2021. See Notice of Motion Hearing. At the hearing, the Court indicated that it believes that the shootout evidence is probative, because flight from police indicates Gross' guilty conscience and mind. See Draft Transcript of Hearing at 12:15-17 (taken December 21, 2021)(Court)("Tr.").[1] The Court informed the parties that its inclination is to "allow the Government to say that Mr. Gross was taken into custody, he resisted the arrest, and that he resisted the arrest violently and just leave it at that," without mentioning the shootout. Tr. at 12:19-22 (Court). The Court then allowed the parties to argue on the Motion. See Tr. at 13:1-2 (Court). First, the United States argued that the shootout should come into evidence, because it goes to Gross' motive and knowledge regarding the escape charge. See Tr. at 13:6-7

---

[1] The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version. Any final transcript may contain slightly different page and/or line numbers.

(White).  Specifically, the United States contended that the shooting "shows he was not wanting to be [taken] into custody and therefore he knew he was not allowed to be out of custody."  Tr. at 13:13-15 (White).  The Court then asked the United States how the shootout's details helped the United States make these points, and the United States responded that it demonstrates that Gross was so adamant to not be taken into custody that he put other people's lives in danger.  See Tr. at 13:17-14:6 (Court, White).  Gross argued that, as a preliminary matter, there has not been a preliminary hearing or indictment against Gross in connection with the shootout, so there has never been a determination of probable cause to charge Gross in connection with the shootout.  See Tr. at 15:3-11 (Glanz).  Further, Gross argued that the evidence does not show Gross' knowledge that he was not allowed to leave the halfway house.  See Tr. 18:1-17 (Glanz).  Gross also argued that the shootout evidence is not necessary to tell the crime's story, because the crime was complete once Gross left the halfway house.  See Tr. 21:15-17 (Glanz).  Moreover, Gross contended that introducing the shootout evidence will confuse the jury and risk a mini-trial, because Gross will have to litigate the factual elements underlying the shooting.  See Tr. at 25:11-21 (Glanz).  The Court then indicated that it believes that the shootout evidence only goes towards Gross' knowledge that he did not have permission to leave federal custody and asked Gross if he was willing to stipulate to that element.  See Tr. at 28:7-15 (Court).  Gross stated that he would not stipulate to it, but that he did not believe the element would be contested.  See Tr. 29:15-30:8 (Glanz).  The United States then acknowledged that, while the shootout evidence is prejudicial, it still must come into evidence, because it is probative to the knowledge element that the United States must prove beyond a reasonable doubt.  See Tr. at 31:14-28 (White).  The Court then stated that, if Gross does not contest the knowledge element, the Court would allow the United States to bring in the information, but sanitize it.  See Tr. at 33:23-34:5 (Court).  The Court informed the

United States that it would allow them to lead one witness through the events of the shooting, but only to the extent that the witness could testify from personal knowledge that Gross was present and that he violently resisted arrest. See Tr. at 37:3-13 (Court). The witness may testify that the police asked Gross to approach them, that he resisted, and that he resisted violently; the witness may not mention any shooting. The United States shall lead one witness, to avoid the witness straying from the subject. Consequently, for the reasons stated on the record, the Court will grant the United States' Motion in part, and deny it in part.

**IT IS ORDERED** that: (i) United States' Opposed Eighth Motion in Limine and Notice of Intent to Admit Evidence Under Federal Rule of Evidence 404(b)(2) and as *Res Gestae* Evidence, filed December 11, 2012 (Doc. 60), is granted in part and denied in part; and (ii) the Plaintiff United States of America may call one witness to testify that police asked Defendant Dean Gross to approach them, he resisted, and he resisted violently; and (iii) the witness may not mention any shooting; and (iv) the United States shall lead the witness, to avoid the witness straying from the subject.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Fred J. Federici
  Acting United States Attorney
Linda Mott
Stephen A. White
  Assistant United States Attorneys
United States Attorney's Office
Albuquerque, New Mexico

    *Attorneys for the Plaintiff*

Margaret Katze
  Federal Public Defender
Dennis J. Candelaria
Buck T. Glanz
  Assistant Federal Public Defender
Federal Public Defender's Office
Albuquerque, New Mexico

    *Attorneys for the Defendant*