**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

UNITED STATES OF AMERICA,

   Plaintiff,

vs.                No. CR 21-0297 JB

DEAN GROSS,

   Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the United States' Objection to the Presentence Investigation Report and Sentencing Memorandum, filed April 6, 2022 (Doc. 109)("Objection"). The primary issue is whether the Court should apply a 5-level enhancement pursuant to U.S.S.G. § 2P1.1(b)(1), because Defendant Dean Gross used force or the threat of force against a person while committing his escape offense. The Court concludes that the 5-level enhancement applies, because escape is a continuing offense, and the United States proves by a preponderance of the evidence that Gross shot at police officers while he was absconding. Consequently, the Court will sustain the Objection and will apply the enhancement.

## FINDINGS OF FACT RELATED TO FALSE STATEMENT CLAIM

1.   On January 23, 2021, Security Threat and Intelligence Unit and United States Marshals Service ("USMS") officers arrived at a home in Albuquerque, New Mexico to locate a fugitive, Destiny Watkins. See Presentence Investigation Report ¶ 11, at 5, filed March 16, 2022 (Doc. 107)("PSR").

2.   There were two travel trailers located on the property. See PSR ¶ 11, at 5.

3.   Gross exited one of the trailers. See PSR ¶ 11, at 5.

4.      Gross did not cooperate with officers.  See PSR ¶ 11, at 5.

5.      Officers asked Gross specifically if Watkins was located inside the trailer, and Gross responded by leaving the trailer and entering the main house.  See PSR ¶ 11, at 5.

6.      Officers continued to observe the trailer.  See PSR ¶ 12, at 5.

7.      Officers heard movement from inside the trailer and instructed anyone inside the trailer to exit.  See PSR ¶ 12, at 5.

8.      Gross "then confirmed Watkins was actually located inside the trailer."  See PSR ¶ 12, at 5.

9.      Watkins exited the travel trailer, and the officers took her into custody.  See PSR ¶ 12, at 5.

## PROCEDRUAL BACKGROUND RELATED TO FALSE STATEMENT CLAIM

On January 27, 2021, the United States filed a Complaint against Gross for making a false statement to a United States officer.  See Criminal Complaint, filed January 27, 2021 (Doc. 1). Officers arrested Gross on February 22, 2021.  See Arrest Warrant Returned Executed, filed February 22, 2021 (Doc. 4).  On February 25, 2021, the Honorable John F. Robbenhaar, United States Magistrate Judge for the United States District Court for the District of New Mexico, entered an Order setting Gross' release conditions.  See Order Setting Conditions of Release, filed February 25, 2021 (Doc. 15)("Release Conditions").  The Release Conditions state:

> The defendant is placed in the custody of: La Pasada Halfway House . . . who agrees to (a) supervise the defendant, (b) use every effort to assure the defendant's appearance at all court proceedings, and (c) notify the court immediately if the defendant violates a condition of release or is no longer in the custodian's custody.

Release Conditions ¶ 6, at 2.

**ADDITIONAL FINDINGS OF FACT RELATED TO ESCAPE**

10.     On April 21, 2021, Gross left La Pasada Halfway House without permission.  See
PSR ¶ 16, at 6.

11.     On June 17, 2021, Gross was involved in an incident in Socorro, New Mexico in
which Gross fired gunshots at State police officers.  See PSR ¶ 17, at 6.

12.     In the Incident Report, Lieutenant Richard Lopez repeatedly states that a male in a
black muscle shirt fired shots at officers.  See State of New Mexico Incident Report at 70-71, filed
April 6, 2022 (Doc. 109-1)("Socorro Incident Report").

13.     Deputy Carlos Valenzuela also states that a man in a black muscle shirt fired shots
at officers.  See Socorro Incident Report at 73-74.

14.     Valenzuela states that "the male with [the] black muscle shirt was burned badly and
his skin was loose from burn injuries."  Socorro Incident Report at 74.

15.     A screenshot of body camera footage from June 17, 2021, shows Gross wearing a
black muscle shirt with burned skin.  See United States' First Amended [Trial] Exhibit List, Exhibit
12, filed December 17, 2021 (Doc. 80)("Gross Photo.").

16.     Gross received severe burns to his body and was transported a burn center in
Lubbock, Texas.  See PSR ¶ 17, at 6.

**PROCEDRUAL BACKGROUND RELATED TO ESCAPE CRIME**

Federal officers again arrested Gross on August 30, 2021.  See Arrest of Dean Gross, filed
August 30, 2021 (text only entry).  On December 8, 2021, a federal Grand Jury charged Gross
with: (i) Count 1, making a false statement to a federal officer by lying about Watkins' presence
in his trailer, in violation of 18 U.S.C. § 1001(a)(2); and (ii) Count 2, knowingly escaping from La
Pasada, an institution for which he was in custody, in violation of 18 U.S.C. § 751(a).  See

Superseding Indictment at 1-2, filed December 8, 2021 (Doc. 49).  On December 21, 2021, Gross

pled guilty to Count 2 of the Indictment for escaping from La Pasada in violation of 18 U.S.C.

§ 751(a).  See Plea Agreement ¶ 6, at 3, filed December 22, 2021 (Doc. 97).  In the Plea Agreement,

Gross admitted:

> On or about April 21, 2021, in Bernalillo County, in the District of New
> Mexico, I, Dean Gross, knowingly escaped from custody at La Pasada Halfway
> House and did not return.  For context, I had been placed in the pretrial custody of
> La Pasada by order of a United States Magistrate Judge after I had been lawfully
> arrested for the crime of making a false statement to the government under 18
> U.S.C. § 1001(a)(2) -- a felony offense.  Further, when I left La Pasada on April
> 21, I had not received permission to leave La Pasada from anybody, including my
> pretrial services officer or any La Pasada employee.  Finally, I knew that nobody
> had given me permission to leave La Pasada.  Thus, I admit that I knowingly
> escaped from custody in violation of 18 U.S.C. § 751(a) under governing Tenth
> Circuit law.

Plea Agreement ¶ 7, at 3-4.

In the PSR, the United States Probation Office ("USPO") calculates Gross' base offense

level to be 13, and, after applying a 2-level reduction for acceptance of responsibility, the USPO

calculates Gross' total offense level to be 11.  See PSR ¶¶ 23, 31, at 7.  The USPO also calculates

Gross' criminal history category to be III, resulting in a Guidelines range of 12 to 18 months of

incarceration.  See PSR ¶ 79, at 21.  The USPO also notes:

> Since the applicable guideline range is in Zone C of the Sentencing Table, the
> minimum term may be satisfied by (1) a sentence of imprisonment; or (2) a sentence
> of imprisonment that includes a term of supervised release with a condition that
> substitutes community confinement or home detention according to the schedule in
> subsection (e), provided that at least one-half of the minimum term is satisfied by
> imprisonment. USSG §5C1.1(d).

PSR ¶ 79, at 21-22.

On April 6, 2022, the United States filed its Objection to the PSR.  See Objection at 1.  The

United States asks the Court to apply a 5-level enhancement pursuant to U.S.S.G. § 2P1.1(b)(1)

for using force in the commission of the offense, because "Defendant Dean Gross attempted to evade capture by shooting at law enforcement officers." Objections at 1. The United States argues that both the Supreme Court of the United States of America and the United States Court of Appeals for the Tenth Circuit have recognized that "the crime of 'escape from custody as defined in § 751(a) is a continuing offense' such that 'an escapee can be held liable for failure to return to custody as well as for his initial departure.'" Objections at 4 (quoting United States v. Bailey, 444 U.S. 394, 413 (1980), and citing United States v. Brown, 314 F.3d 1216, 1224 (10th Cir. 2003), and United States v. Sanchez, 536 F. App'x 827, 830 (10th Cir. 2013)(unpublished)[1]). The United States concludes that, because escape is a continuing offense, the Court should consider Gross' actions "after leaving La Pasada, but before being taken back into custody," as part of his specific offense characteristics. Objections at 4. Specifically, the United States argues that, "when Mr. Gross shot at law enforcement officers while on the lam," "'the use or the threat of force against any person was involved' under U.S.S.G. § 2P1.1(b)(1) given that Mr. Gross was still in the course

---

[1]United States v. Sanchez is an unpublished opinion, but the Court can rely on an unpublished opinion to the extent its reasoned analysis is persuasive in the case before it. See 10th Cir. R. 32.1(A) ("Unpublished decisions are not precedential, but may be cited for their persuasive value."). The Tenth Circuit has stated:

> In this circuit, unpublished orders are not binding precedent, . . . [a]nd we have generally determined that citation to unpublished opinions is not favored. However, if an unpublished opinion or order and judgment has persuasive value with respect to a material issue in a case and would assist the court in its disposition, we allow a citation to that decision.

United States v. Austin, 426 F.3d 1266, 1274 (10th Cir. 2005). The Court concludes that United States v. Sanchez, United States v. Schmidt, 353 F. App'x 132 (10th Cir. 2009), United States v. Hendrickson, 592 F. App'x 699 (10th Cir. 2014), and United States v. Banda, 168 F. App'x 284 (10th Cir. 2006), have persuasive value with respect to a material issue, and will assist the Court in its disposition of this Memorandum Opinion and Order.

of committing the crime of escape." Objections at 4-5 (quoting U.S.S.G. § 2P1.1(b)(1)). The United States contends that it can prove by a preponderance of the evidence that Gross shot at officers, because two officers described a person in a black muscle shirt shooting at them, and the lapel footage shows Gross wearing a black muscle shirt. See Objections at 5.

Gross also filed a Sentencing Memorandum. See Defendant's Sentencing Memorandum, filed April 7, 2022 (Doc. 110)("Sentencing Memo."). In his Sentencing Memo., Gross asks the Court to sentence him to a below-Guidelines sentence of 245 days' custody followed by 1 year of supervised release. See Sentencing Memo. at 1. Gross does not address the United States' Objection to the PSR in his Sentencing Memo. See Sentencing Memo. at 1-4.

The USPO filed an Addendum to the Presentence Report, filed April 11, 2022 (Doc. 111)("PSR Addendum"). In the PSR Addendum, the USPO states: "USSG § 2P1.1(b)(1) was not applied, due to the guideline for Escape being precluded from expanded relevant conduct." PSR Addendum at 2. The USPO contends that the shooting is not relevant conduct to Gross' escape offense, because it "occurred almost two months after he escaped." PSR Addendum at 2. Consequently, the USPO does not recommend a change to Gross' total offense level or to the Guidelines range. See Addendum at 2.

On April 13, 2022, Gross filed the Defendant's Response to Government's Objection to the Presentence Investigation Report, filed April 13, 2022 (Doc. 112)("Gross Response"). Gross "concurs with the probation officer's addendum" that a "five-level enhancement for USSG § 2P1.1(b)(1) is not appropriate in this case." Gross Response at 1. Consequently, Gross asks the Court to overrule the Objection. See Gross Response at 1.

## LAW REGARDING THE GUIDELINES

In United States v. Booker, 543 U.S. 220 (2005), the Supreme Court of the United States of America severed the mandatory provisions from the Sentencing Reform Act, Pub. L. No. 98-473, 98 Stat. 1976, thus making Guidelines sentencing ranges effectively advisory.  In excising the two sections, the Supreme Court left the remainder of the Sentencing Reform Act intact, including 18 U.S.C. § 3553: "Section 3553(a) remains in effect, and sets forth numerous factors that guide sentencing.  Those factors in turn will guide appellate courts, as they have in the past, in determining whether a sentence is unreasonable."  United States v. Booker, 543 U.S. at 261.

Congress has directed sentencing courts to impose a sentence "sufficient, but not greater than necessary" to comply with four statutorily defined purposes enumerated in 18 U.S.C. § 3553(a)(2):

> (A)     to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B)     to afford adequate deterrence to criminal conduct;
>
> (C)     to protect the public from further crimes of the defendant; and
>
> (D)     to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner . . . .

18 U.S.C. § 3553(a)(2)(A)-(D).

> [A] defendant who has been found guilty of an offense described in any Federal statute . . . shall be sentenced in accordance with the provisions of this chapter so as to achieve the purposes set forth in subparagraphs (A) through (D) of section 3553(a)(2) to the extent that they are applicable in light of all the circumstances of the case.

18 U.S.C. § 3551.  To achieve these purposes, § 3553(a) directs sentencing courts to consider:

(i) the Guidelines; (ii) the nature of the offense and of the defendant's character; (iii) the available

sentences; (iv) the policy favoring uniformity in sentences for defendants who commit similar crimes; (v) the need to provide restitution to victims; and (vi) any pertinent United States Sentencing Commission policy statements in effect on the date of sentencing.  See 18 U.S.C. § 3553(a)(1), (3)-(7).

Although the Guidelines are no longer mandatory, both the Supreme Court and the United States Court of Appeals for the Tenth Circuit have clarified that, while the Guidelines are one of several factors which § 3553(a) enumerates, they are entitled to careful consideration.  See Rita v. United States, 551 U.S. 338, 349 (2007)("The Guidelines as written reflect the fact that the Sentencing Commission examined tens of thousands of sentences and worked with the help of many others in the law enforcement community over a long period of time in an effort to fulfill [its] statutory mandate."); United States v. Cage, 451 F.3d 585, 593 (10th Cir. 2006)(describing the Guidelines as more than "just one factor among many").  They are significant, because "the Guidelines are an expression of popular political will about sentencing that is entitled to due consideration . . . [and] represent at this point eighteen years' worth of careful consideration of the proper sentence for federal offenses."  United States v. Cage, 451 F.3d at 593 (internal quotation marks omitted)(quoting United States v. Terrell, 445 F.3d 1261, 1265 (10th Cir. 2006)).  A reasonable sentence is one that also "avoid[s] unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."  18 U.S.C. § 3553(a).  See United States v. Booker, 543 U.S. at 261-62.

The Tenth Circuit has "joined a number of other circuits in holding that a sentence within the applicable Guidelines range is presumptively reasonable."  United States v. Terrell, 445 F.3d 1261, 1264 (10th Cir. 2006), overruled on other grounds by Rita v. United States, 551 U.S. at 349, as recognized in United States v. Zamora-Solorzano, 528 F.3d 1247, 1251 n.3 (10th Cir. 2008).

This presumption, however, is an appellate presumption, and not one that the trial court can or

should apply. See Gall v. United States, 552 U.S. 38, 46-47 (2007); Kimbrough v. United States,

552 U.S. 85, 90-91 (2007); Rita v. United States, 551 U.S. at 351. Instead, the trial court must

undertake the § 3553(a) balancing of factors without any presumption in favor of the advisory[2]

---

[2]Attorneys and courts often say that the "Guidelines" are advisory, but it appears more appropriate to say that the resulting Guidelines ranges are advisory. Gall v. United States, 552 U.S. at 46 ("As a result of our decision [in United States v. Booker], the Guidelines are now advisory . . . ."); United States v. Leroy, 298 F. App'x 711, 712 (10th Cir. 2008)(unpublished)("[T]he Guidelines are advisory, not mandatory."); United States v. Sells, 541 F.3d 1227, 1237 (10th Cir. 2008)("[T]he sentence ultimately imposed by the district court was based on a correctly calculated Guidelines range, a stated consideration of the § 3553(a) factors, and an understanding that the Guidelines are advisory."). The Court must consider the Guidelines, see Gall v. United States, 552 U.S. at 46 ("It is . . . clear that a district judge must give serious consideration to the extent of any departure from the Guidelines . . . ."), and must accurately calculate the Guidelines range, see Gall v. United States, 552 U.S. at 49 ("[A] district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range."). The Court is not mandated, however, to apply a sentence within the calculated Guidelines range. See United States v. Sierra-Castillo, 405 F.3d 932, 936 n.2 (10th Cir. 2005)("[D]istrict courts post-Booker have discretion to assign sentences outside of the Guidelines-authorized range . . . ."). Accord United States v. Chavez-Rodarte, No. CR 08-2499 JB, 2010 WL 3075285, at *2-3 (D.N.M. July 16, 2010)(Browning, J.).

   The Court must adhere to the following three-step sequence when sentencing a criminal defendant: first, determining the appropriate sentencing range on the basis of Guidelines' chapters 2 through 4; next, applying Guidelines-contemplated departures based on parts 5H and 5K; and, only then, varying from the Guidelines framework on the basis of the § 3553(a) factors taken as a whole. The Court must follow this sequence, because: (i) the Guidelines expressly provide for it, and courts must still consult the Guidelines, even if they will subsequently vary from them in the third step of the sequence; and (ii) adherence to this sequence is the only way to give effect to 18 U.S.C. § 3553(e).

. . . .

   The Supreme Court held in United States v. Booker that "district courts, while not bound to apply the Guidelines, must consult those Guidelines and take them into account when sentencing," 543 U.S. at 264, but further expounded in Kimbrough v. United States, 552 U.S. 85 (2007), that "courts may vary [from the Guidelines ranges] based solely on policy considerations, including disagreements with the Guidelines," 552 U.S. at 101 (alteration in original)(internal quotation

- 9 -

Guidelines sentence.  See Rita v. United States, 551 U.S. at 351; Gall v. United States, 552 U.S. at 46-47; Kimbrough v. United States, 552 U.S. at 90-91.

> While the Supreme Court's decision in United States v. Booker has given the sentencing court discretion that it did not have earlier, the sentencing court's first task remains to accurately and correctly determine the advisory-guideline sentence. Thus, before the sentencing court takes up a defendant's Booker arguments, the sentencing court must first determine whether the defendant is entitled to downward departures.  The sentencing court may, however, also use these same departure factors in the Booker calculus, even if the court does not grant a downward departure.

United States v. Apodaca-Leyva, No. CR 07-1479 JB, 2008 WL 2229550, at *6 (D.N.M. Feb. 13, 2008)(Browning, J.).  The Supreme Court has recognized, however, that sentencing judges are "in a superior position to find facts and judge their import under § 3553(a) in each particular case." Kimbrough v. United States, 552 U.S. at 89.  Applying § 3553(a)'s factors, the Court has concluded that the case of an illegal immigrant who re-entered the United States to provide for his two children and two siblings was not materially different from other re-entry cases, and, thus, no

---

marks omitted).  In theory, this freedom could mean that a district court may excise individual portions of the Guidelines along the way as it performs an otherwise by-the-book Guidelines analysis, end up with a sentence with built-in variances, and never even know what sentence a true, rigid Guidelines application would yield.  In practice, however, appellate courts expect district courts to first obtain the true Guidelines' sentence range and circumscribe their United States v. Booker-granted authority to post-Guidelines analysis "variances."  Irizarry v. United States, 553 U.S. 708, 710-16 (2008).  A district court that attempts to vary from U.S.S.G. § 1B1.1's basic sequence most likely acts procedurally unreasonably.  See Gall v. United States, 552 U.S. 38, 51 (2007)(holding that a sentence is procedurally reasonable if "the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence" (emphasis added)).

United States v. Nolf, 30 F. Supp. 3d 1200, 1222-24, (D.N.M. June 20, 2014)(Browning, J.)(emphasis in original).

variance from the Guidelines sentence was warranted.  See United States v. Almendares-Soto, No. CR 10-1922 JB, 2010 WL 5476767, at *12 (D.N.M. Dec. 14, 2010)(Browning, J.).  On the other hand, in United States v. Jager, No. CR 10-1531 JB, 2011 WL 831279 (D.N.M. Feb. 17, 2011)(Browning, J.), although the defendant's military service was not present to an unusual degree and, thus, did not warrant a departure, the Court concluded that a variance was appropriate, because the defendant's military service was "superior and uniformly outstanding," as the defendant appeared to have been "trustworthy[] and dedicated, and he served with distinction." 2011 WL 831279, at *14.

## LAW REGARDING THE BURDEN OF PROOF REQUIRED FOR ENHANCEMENTS UNDER THE GUIDELINES

In Apprendi v. New Jersey, 530 U.S. 466 (2000)("Apprendi"), the Supreme Court reaffirmed the principle that it is permissible for sentencing judges "to exercise discretion -- taking into consideration various factors relating both to offense and offender -- in imposing judgment within the range prescribed by statute."  530 U.S. at 481.  The Supreme Court cautioned, however, that the Constitution of the United States of America limits this discretion, and the Sixth Amendment to the Constitution requires that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."  Apprendi, 530 U.S. at 490.  In Blakely v. Washington, 542 U.S. 296 (2004), the Supreme Court elaborated on its holding in Apprendi, stating that the "'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant."  Blakely v. Washington, 542 U.S. at 303 (emphasis and citations omitted).  In United States v. Booker, however, the Supreme Court held that, because the sentencing guidelines are no

longer mandatory, "*Apprendi* does not apply to the present advisory-Guidelines regime."  United States v. Ray, 704 F.3d 1307, 1314 (10th Cir. 2013).  See United States v. Booker, 543 U.S. at 259 ("[W]ithout this provision [of the Guidelines statute] -- namely, the provision that makes the relevant sentencing rules mandatory and imposes binding requirements on all sentencing judges -- the statute falls outside the scope of *Apprendi*'s requirement." (alterations and internal quotations marks omitted)).  More recently, the Supreme Court held that the requirements in Apprendi apply to facts that increase a defendant's mandatory minimum sentence.  See Alleyne v. United States, 570 U.S. 99, 103 (2013)("Alleyne").

In United States v. Magallanez, 408 F.3d 672 (10th Cir. 2005), the Tenth Circuit held that Blakely v. Washington and United States v. Booker did not change the district court's enhancement findings analysis.  See United States v. Magallanez, 408 F.3d at 684-85.  United States v. Magallanez involved plain-error review of a drug sentence in which a jury found the defendant guilty of conspiracy to possess with intent to distribute and of distributing methamphetamine.  See 408 F.3d at 676.  As part of its verdict, the jury, through a special interrogatory, attributed to the defendant between 50 and 500 grams of methamphetamine.  See 408 F.3d at 682.  At sentencing, however, the judge -- based on testimony of the various amounts that government witnesses indicated they had sold to the defendant -- attributed 1200 grams of methamphetamine to the defendant and used that amount to increase his sentence under the Guidelines.  See 408 F.3d at 682.  The district court's findings increased the defendant's Guidelines sentencing range from 63 to 78 months to 121 to 151 months.  See 408 F.3d at 682-83.  On appeal, the Tenth Circuit stated that, both before and after Congress' passage of the Sentencing Reform Act, "sentencing courts maintained the power to consider the broad context of a defendant's conduct, even when a court's view of the conduct conflicted with the jury's verdict."

408 F.3d at 684.   Although United States v. Booker made the Guidelines ranges "effectively advisory," the Tenth Circuit reaffirmed that "district courts are still required to consider Guideline ranges, which are determined through application of the preponderance standard, just as they were before."  United States v. Magallanez, 408 F.3d at 685 (citation omitted).

The Tenth Circuit, while "recognizing 'strong arguments that relevant conduct causing a dramatic increase in sentence ought to be subject to a higher standard of proof,'" has "long held that sentencing facts in the 'ordinary case' need only be proven by a preponderance."  United States v. Olsen, 519 F.3d 1096, 1105 (10th Cir. 2008)(quoting United States v. Washington, 11 F.3d 1510, 1516 (10th Cir. 1993)).[3]  "[T]he application of an enhancement . . . does not implicate

---

[3]Although the Tenth Circuit stated in United States v. Washington that "the issue of a higher than a preponderance standard is foreclosed in this circuit," 11 F.3d at 1516, the Tenth Circuit has since classified its holding as leaving "open the possibility that due process may require proof by clear and convincing evidence before imposition of a Guidelines enhancement that increases a sentence by an 'extraordinary or dramatic' amount," United States v. Ray, 704 F.3d at 1314 (quoting United States v. Olsen, 519 F.3d at 1105).  See United States v. Olsen, 519 F.3d at 1105 (affirming the use of the preponderance-of-the-evidence standard for sentencing facts that increase a sentence in the "'ordinary case'" (quoting United States v. Washington, 11 F.3d at 1516)).  The Tenth Circuit has not yet found that an "extraordinary or dramatic" instance warrants a higher standard of proof for certain facts that enhance a defendant's sentence.  United States v. Olsen, 519 F.3d at 1105 (explaining that it need not determine whether a higher standard of proof is required to sentence a defendant for committing perjury in relation to a grand jury investigation, because the enhancement did not require the district court to determine that the defendant committed murder, but only that he obstructed a homicide investigation).  See United States v. Constantine, 263 F.3d 1122, 1125 n.2 (10th Cir. 2001)(affirming a preponderance-of-the-evidence standard for facts that enhance a defendant's offense level 4 levels); United States v. Valdez, 225 F.3d 1137, 1143 n.2 (10th Cir. 2000)(rejecting the defendant's argument that a dramatic increase in a sentence because of a sentencing judge's finding of additional amounts of methamphetamine associated with acquitted charges entitled the defendant to a clear-and-convincing evidence standard at sentencing, and noting that the Tenth Circuit "foreclosed by binding precedent" this argument); United States v. Washington, 11 F.3d at 1516 (finding that a district court need not find by any more than a preponderance of the evidence the amount of cocaine a defendant distributed, even though its findings increased the defendant's sentence from twenty years to consecutive forty-year terms).

the Supreme Court's holding in Apprendi v. New Jersey."  United States v. Reyes-Vencomo, No. CR 11-2563 JB, 2012 WL 2574810, at *3 (D.N.M. June 26, 2012)(Browning, J.).  The Tenth Circuit applies Apprendi's requirement that a fact be submitted to a jury only where the fact would increase a defendant's sentence "above the statutory maximum permitted by the statute of conviction."  United States v. Price, 400 F.3d 844, 847 (10th Cir. 2005).  Accord United States v. Ray, 704 F.3d at 1314.  A defendant may assert an error under Apprendi only where the fact at issue increased his sentence beyond the statutory maximum.  See United States v. O'Flanagan, 339 F.3d 1229, 1232 (10th Cir. 2003)(holding that a defendant could not assert an error under Apprendi, because "his sentence does not exceed the statutory maximum"); United States v. Hendrickson, 592 F. App'x 699, 705 (10th Cir. 2014)(unpublished)(holding that, after Alleyne, "[i]t is well-established that sentencing factors need not be charged in an indictment and need only be proved to the sentencing judge by a preponderance of the evidence").  The Court has noted:

> [A]lthough the decision of the Supreme Court of the United States in Alleyne v. United States, . . . expands the rule from Apprendi v. New Jersey . . . (holding that facts that increase the maximum sentence a defendant faces must be proven to a jury beyond a reasonable doubt), to cover facts that increase the mandatory minimum sentence, as well as the maximum sentence, it does not prohibit district judges from continuing to find advisory sentencing factors by a preponderance of the evidence.  See [United States v. ]Sangiovanni, 2014 WL 4347131, at *22-26 [(D.N.M. 2014)(Browning, J.)].

United States v. Cervantes-Chavez, No. CR 14-0259 JB, 2014 WL 6065657, at *14 (D.N.M. Nov. 3, 2014)(Browning, J.).

### LAW REGARDING RELEVANT CONDUCT FOR SENTENCING

In calculating an appropriate sentence, the Guidelines consider a defendant's "offense of conviction and all relevant conduct under § 1B1.3 (Relevant Conduct) unless a different meaning

is specified or is otherwise clear from the context."  U.S.S.G. § 1B1.1, n.1(H).  In <u>United States v.</u>

<u>Booker</u>, the Supreme Court notes:

> Congress' basic statutory goal -- a system that diminishes sentencing disparity --
> depends for its success upon judicial efforts to determine, and to base punishment
> upon, the real conduct that underlies the crime of conviction.  That determination
> is particularly important in the federal system where crimes defined as, for example,
> "obstruct[ing], delay[ing], or affect[ing] commerce or the movement of any article
> or commodity in commerce, by . . . extortion," . . . can encompass a vast range of
> very different kinds of underlying conduct.

543 U.S. at 250-51 (emphasis in original)(quoting 18 U.S.C. § 1951(a)).  The Supreme Court's

reasoning in <u>United States v. Booker</u> suggests that the consideration of real conduct is necessary

to effectuate Congress' purpose in enacting the Guidelines.

Section 1B1.3(a) provides that the base offense level under the Guidelines "shall be

determined" based on the following:

> (1)
>
> (A)    all acts and omissions committed, aided, abetted,
> counseled, commanded, induced, procured, or willfully caused by
> the defendant; and
>
> (B)    in the case of a jointly undertaken criminal activity
> (a criminal plan, scheme, endeavor, or enterprise undertaken by the
> defendant in concert with others, whether or not charged as a
> conspiracy), all reasonably foreseeable acts and omissions of others
> in furtherance of the jointly undertaken criminal activity, that
> occurred during the commission of the offense of conviction, in
> preparation for that offense, or in the course of attempting to avoid
> detection or responsibility for that offense;
>
> (2)    solely with respect to offenses of a character for which § 3D1.2(d)
> would require grouping of multiple counts, all acts and omissions described in
> subdivisions (1)(A) and (1)(B) above that were part of the same course of conduct
> or common scheme or plan as the offense of conviction;
>
> (3)    all harm that resulted from the acts and omissions specified in
> subsections (a)(1) and (a)(2) above, and all harm that was the object of such acts
> and omissions; and

(4)     any other information specified in the applicable guideline.

U.S.S.G. § 1B1.3(a)(1)-(4).  The court may consider, as relevant conduct, actions that have not resulted in a conviction.  Pursuant to § 6A1.3's commentary, evidentiary standards lower than beyond a reasonable doubt are permitted to show relevant conduct.  The court may rely upon reliable hearsay, so long as the evidence meets the preponderance-of-the-evidence standard.  See United States v. Vigil, 476 F. Supp. 2d 1231, 1245 (D.N.M. 2007)(Browning, J.), aff'd, 523 F.3d 1258 (10th Cir. 2008).  Accord United States v. Schmidt, 353 F. App'x 132, 135 (10th Cir. 2009)(unpublished)("The district court's determination of 'relevant conduct' is a factual finding subject to a preponderance of the evidence standard, and clear error review.").  The evidence and information upon which the court relies, however, must have sufficient indicia of reliability.  See U.S.S.G. § 6A1.3 ("In resolving any dispute concerning a factor important to the sentencing determination, the court may consider relevant information without regard to its admissibility under the rules of evidence applicable at trial, provided that the information has sufficient indicia of reliability to support its probable accuracy.").

Supreme Court precedent on relevant conduct consists primarily of two cases: Witte v. United States, 515 U.S. 389 (1995), and United States v. Watts, 519 U.S. 148 (1997).  In Witte v. United States, the Supreme Court upheld the use of uncharged conduct at sentencing against a double-jeopardy challenge.  See 515 U.S. at 404-06.  The defendant in Witte v. United States had been involved in an unsuccessful attempt to import marijuana and cocaine into the United States in 1990, and in an attempt to import marijuana in 1991.  See 515 U.S. at 392-93.  In March, 1991, a federal grand jury indicted the defendant for attempting to possess marijuana with intent to distribute in association with the defendant's latter attempt to import narcotics.  See 515 U.S.

at 392-93.  At sentencing, the district court concluded that, because the 1990 attempt was part of the continuing conspiracy, it was relevant conduct under § 1B1.3, and thus calculated the defendant's base offense level based on the aggregate amount of drugs involved in both the 1990 and 1991 episodes.  See 515 U.S. at 394.

In September, 1992, a second federal grand jury indicted the defendant for conspiring and attempting to import cocaine in association with his activities in 1990.  See 515 U.S. at 392-93. The defendant moved to dismiss the indictment, contending that he had already been punished for the cocaine offenses, because the court had considered those offenses relevant conduct at the sentencing for the 1991 marijuana offense.  See 515 U.S. at 395.  The district court agreed and dismissed the indictment, holding that punishment for the cocaine offenses would violate the prohibition against multiple punishments in the Double Jeopardy Clause of the Fifth Amendment to the Constitution.  See 515 U.S. at 395.  The United States Court of Appeals for the Fifth Circuit reversed and held that "the use of relevant conduct to increase the punishment of a charged offense does not punish the offender for the relevant conduct."  United States v. Witte, 25 F.3d 250, 258 (5th Cir. 1994).  In reaching this holding, the Fifth Circuit acknowledged that its conclusion was contrary to other United States Courts of Appeals opinions, including a Tenth Circuit opinion, that had previously considered this question.  See 25 F.3d at 255 n.19 (citing United States v. Koonce, 945 F.2d 1145 (10th Cir. 1991)).

The Supreme Court granted certiorari to resolve the conflict between the Courts of Appeals and affirmed the Fifth Circuit decision.  See Witte v. United States, 515 U.S. at 395.  In holding that a district court's consideration of the defendant's relevant conduct did not punish the defendant for that conduct, the Supreme Court concluded that "consideration of information about the defendant's character and conduct at sentencing does not result in 'punishment' for any offense

other than the one of which the defendant was convicted." 515 U.S. at 401. The Supreme Court reasoned that sentencing courts had always considered relevant conduct and "the fact that the sentencing process has become more transparent under the Guidelines . . . does not mean that the defendant is now being punished for uncharged relevant conduct as though it were a distinct criminal offense." 515 U.S. at 402. Sentencing enhancements do not punish a defendant for uncharged offenses; rather, they reflect Congress' policy judgment "that a particular offense should receive a more serious sentence within the authorized range if it was either accompanied by or preceded by additional criminal activity." 515 U.S. at 403.

In United States v. Watts, the Supreme Court, in a per curiam opinion, relied upon Witte v. United States and upheld, against a double-jeopardy challenge, a sentencing judge's use of conduct for which the defendant had been acquitted. See United States v. Watts, 519 U.S. at 149. The Supreme Court noted that its conclusion was in accord with every United States Court of Appeals -- other than the Court of Appeals for the Ninth Circuit -- and that each had previously held that a sentencing court may consider conduct for which the defendant had been acquitted, if the government establishes that conduct by a preponderance of the evidence. See 519 U.S. at 149 (citing, e.g., United States v. Coleman, 947 F.2d 1424, 1428-29 (10th Cir. 1991)). The Supreme Court began its analysis with 18 U.S.C. § 3661: "No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." United States v. Watts, 519 U.S. at 151 (quoting 18 U.S.C. § 3661). According to the Supreme Court, 18 U.S.C. § 3661 codifies "the longstanding principle that sentencing courts have broad discretion to consider various kinds of information" and that "the Guidelines did not alter this aspect of the sentencing court's discretion." United States v. Watts, 519 U.S. at 151-52.

Tenth Circuit caselaw now adheres closely to the Supreme Court's results in <u>Witte v.</u> <u>United States</u> and <u>United States v. Watts</u>.  <u>See</u> <u>United States v. Andrews</u>, 447 F.3d 806, 810 (10th Cir. 2006)(applying <u>Witte v. United States</u>' holding to affirm that a career-offender enhancement does not violate the Fifth Amendment's Double Jeopardy Clause).  In <u>United States v. Banda</u>, 168 F. App'x 284 (10th Cir. 2006)(unpublished), the Tenth Circuit rejected a defendant's argument that it was "structural error" for a district court to find sentencing factors "by a preponderance of the evidence rather than the jury applying a beyond-a-reasonable-doubt standard."  168 F. App'x at 290. The Tenth Circuit explained that "'[i]t is now universally accepted that judge-found facts by themselves do not violate the Sixth Amendment.  Instead, the constitutional error was the court's reliance on judge-found facts to enhance the defendant's sentence mandatorily.'"  168 F. App'x at 290 (quoting <u>United States v. Lauder</u>, 409 F.3d 1254, 1269 (10th Cir. 2005)).

In <u>United States v. Coleman</u>, the defendant appealed the district court's sentence enhancement for firearms possession after he was convicted of conspiracy to possess and possession of a controlled substance with intent to distribute but was acquitted of using or carrying a firearm during and in relation to a drug trafficking crime.  <u>See</u> 947 F.2d at 1428.  The Tenth Circuit acknowledged that courts had taken various positions on whether a sentence may be enhanced for firearms possession despite a defendant's acquittal on firearms charges.  <u>See</u> 947 F.2d at 1428-29 (citing <u>United States v. Duncan</u>, 918 F.2d 647, 652 (6th Cir. 1990)("[A]n acquittal on a firearms carrying charge leaves ample room for a district court to find by the preponderance of the evidence that the weapon was possessed during the drug offense."); <u>United States v.</u> <u>Rodriguez</u>, 741 F. Supp. 12, 13-14 (D.D.C. 1990)(Green, J.)(refusing to apply 2-level enhancement for firearms possession, because "[t]o add at least 27 months to the sentence for a

charge of which the defendant was found not guilty violates the constitutional principle of due process and the ban against double jeopardy")).

Without discussion related to the standard of proof a sentencing court should use to make factual findings, the Tenth Circuit held that the district court did not err in enhancing the defendant's sentence for possession of a firearm.  See United States v. Coleman, 947 F.2d at 1429.  The Tenth Circuit based its conclusion on evidence that: (i) individuals at the arrest scene handled the weapons at will; (ii) the weapons were handled at will by individuals who lived at the house; and (iii) the weapons were kept for the protection of conspiracy participants and the narcotics involved.  See 947 F.2d at 1429.  The Tenth Circuit summarized that, in reviewing relevant federal case law, it found "persuasive the decisions that have allowed a sentencing court to consider trial evidence that was applicable to a charge upon which the defendant was acquitted."  947 F.2d at 1429.

In United States v. Washington, the defendant argued that the United States needed to prove drug quantities used as relevant conduct to establish a defendant's offense level by clear-and-convincing evidence, rather than by a preponderance of the evidence.  See 11 F.3d at 1512. The defendant objected to his sentencing, because the drug quantity that the district court considered as relevant conduct, and which the court found by a preponderance of the evidence, increased his Guidelines sentencing range from 210-262 months to life in prison.  See 11 F.3d at 1515.  The defendant argued "that because the additional drug quantities effectively resulted in a life sentence a higher standard of proof should be required."  11 F.3d at 1515.  Although the Tenth Circuit in United States v. Washington "recognize[d] the strong arguments that relevant conduct causing a dramatic increase in sentence ought to be subject to a higher standard of proof," it held that "the Due Process Clause does not require sentencing facts in the ordinary case to be

proved by more than a preponderance standard." 11 F.3d at 1516 (citing <u>McMillan v.</u> <u>Pennsylvania</u>, 477 U.S. 79, 84 (1986)). <u>See</u> <u>United States v. Sangiovanni</u>, 2014 WL 4347131, at *22-26 (concluding that a sentencing court can cross reference from the Guidelines that correspond to the defendant's crime of conviction to the Guidelines for another, more harshly punished crime, if it can be established by a preponderance of the evidence that the defendant committed the more serious crime); <u>United States v. Cervantes-Chavez</u>, 59 F. Supp. 3d 1295, 1314-15 (D.N.M. 2014)(Browning, J.)(cross-referencing from the guideline for being an illegal alien in possession of a firearm to the drug-possession guideline after finding by a preponderance of the evidence that the defendant committed a drug-possession crime).

The Court previously has held that it may consider a defendant's refusal to answer questions for the PSR, while not drawing an adverse inference from the refusal. <u>See</u> <u>United States</u> <u>v. Goree</u>, No. CR 11-0285 JB, 2012 WL 592869, at *11 (D.N.M. 2012)(Browning, J.). The Court also has held that, although it can consider a defendant's silence about information regarding herself or others engaging in criminal conduct, it will not rely on that silence to increase the defendant's sentence. <u>See</u> <u>United States v. Chapman</u>, No. CR 11-0904 JB, 2012 WL 2574814, at *13 n.5 (D.N.M. 2012)(Browning, J.). Finally, the Court has held that a defendant's "aggression towards other individuals, and the murder he may have attempted to orchestrate while incarcerated" is relevant information which the Court can consider in fashioning a proper sentence. <u>United States v. Romero</u>, No. CR 09-1253 JB 2012 WL 6632493, at *23 (D.N.M. Dec. 6, 2012)(Browning, J.). <u>See</u> <u>United States v. Tapia</u>, No. CR 12-3012 JB, 2017 WL 6417610, at *10-15 (D.N.M. Dec. 14, 2017)(Browning, J.).

## ANALYSIS

The USPO determines that Gross' base-offense level is 13 and that his total offense level is 11, based on a 2-level reduction for acceptance of responsibility.  See PSR ¶ 23, 31, at 7.  The USPO does not apply either U.S.S.G § 2P1.1(b)(1)'s 5-level enhancement for use of force or U.S.S.G. § 2P1.1(b)(3)'s 4-level reduction for escape from a non-secure facility when no additional felony crimes have been committed.  The United States asks the Court to apply U.S.S.G. § 2P1.1(b)(1)'s 5-level enhancement.  See Objection at 1.  The Court concludes that U.S.S.G. § 2P1.1(b)(1)'s 5-level enhancement applies, because Gross used force in the course of his escape offense.

U.S.S.G. § 2P1.1 provides that, for "Escape, Instigating or Assisting Escape," the Court should apply a 5-level enhancement "[i]f the use or the threat of force against any person was involved."  U.S.S.G. § 2P1.1(b)(1).  Moreover, U.S.S.G. § 2P1.1(b)(3) provides:

> (3)     If the defendant escaped from the non-secure custody of a community corrections center, community treatment center, "halfway house," or similar facility, and subsection (b)(2) is not applicable, decrease the offense level under subsection (a)(1) by 4 levels or the offense level under subsection (a)(2) by 2 levels. *Provided*, however, that this reduction shall not apply if the defendant, while away from the facility, committed any federal, state, or local offense punishable by a term of imprisonment of one year or more.

U.S.S.G. § 2P1.1(b)(3)(emphasis in original).  U.S.S.G. § 1B1.3 provides that, for "Chapter Two (Offense Conduct)," the specific offense characteristics "shall be determined on the basis of the following: . . . all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant."  U.S.S.G. § 1B1.3(a)(1)(A).  Both the Supreme Court and the Tenth Circuit have concluded that escape is a continuing offense.  See United States v. Bailey, 444 U.S. 394, 413 (1980)("[W]e think it clear beyond peradventure that escape from federal custody as defined in § 751(a) is a continuing offense and that an escapee can be held liable

for failure to return to custody as well as for his initial departure."); United States v. Brown, 314 F.3d 1216, 1224 (10th Cir. 2003)(concluding that escape is a continuing offense).

In United States v. Brown, the Tenth Circuit considers whether U.S.S.G. § 2K2.1(b)(5) -- an enhancement for using a firearm in connection with another felony offense -- applies to Brown, where Brown possesses a firearm while he is on the run from police after escaping from jail. See United States v. Brown, 314 F.3d at 1222. On appeal, Brown argues that his possession of the gun was not in connection with the escape, because "he merely possessed a gun which . . . neither facilitated nor had the potential to facilitate the escape," and "the escape was complete after he left the jail successfully and thus the later gun possession could not be" in connection with the escape. See 314 F.3d at 1222. The Tenth Circuit concludes:

> [I]n light of our recognition that escape presents a continuing threat of violence until the escapee is safely returned to custody, we hold that for purposes of § 2K2.1(b)(5), every escape is sufficiently continuing such that possession of a gun subsequent to the initial departure from custody can qualify as being "in connection with" the escape.

314 F.3d at 1224.

Along the same lines, in United States v. Sanchez, 536 F. App'x 827 (10th Cir. 2013)(unpublished), the Tenth Circuit considers whether § 2P1.1(b)(1) applies to Sanchez, where Sanchez escapes from a halfway house, contacts his ex-girlfriend, and tells his ex-girlfriend that he will "burn her shop down" unless she helps him leave town. United States v. Sanchez, 536 F. App'x at 828. On appeal, Sanchez argues that "the district court improperly considered his escape to be a continuing offense" and, therefore, that the district court should not have applied § 2P1.1(b)(1). United States v. Sanchez, 536 F. App'x at 828. The Tenth Circuit affirms the district court and states that "Mr. Sanchez was still in the course of committing the offense of escape when he contacted and threatened Ms. Smith." United States v. Sanchez, 536 F. App'x at

830.  Consequently, the Tenth Circuit holds that "the district court reasonably concluded Mr. Sanchez made a threat of force during his ongoing or continuing escape, supporting a five-level enhancement under U.S.S.G. § 2P1.1(b)(1)."  United States v. Sanchez, 536 F. App'x at 830-31.

Here, the United States argues that the Court should apply U.S.S.G. § 2P1.1(b)(1), because Gross was involved in a shootout with police officers in Socorro while he was on the run from federal custody.  See Objections at 1-2.  The USPO argues that U.S.S.G. § 2P1.1(b)(1) should not apply "due to the guideline for Escape being precluded from expanded relevant conduct."  PSR Addendum at 2.  The USPO does not provide a citation for its assertion, however, and the Court is unable to locate authority to support the argument that escape is precluded from expanded relevant conduct.  Moreover, the Court agrees with the United States that, under both Supreme Court and Tenth Circuit precedent, escape is a continuing offense and, therefore, the Court should consider a defendant's conduct while they are absconding as part of the offense conduct, not simply as part of the relevant conduct.  See U.S.S.G. § 1B1.3(a)(1)(A); United States v. Bailey, 444 U.S. at 413; United States v. Brown, 314 F.3d at 1222.

The United States must prove by a preponderance of the evidence that Gross used force in his escape offense.  See United States v. Magallanez, 408 F.3d at 685.  The United States argues that "Gross was 'identified as shooting at officers' in Socorro County, New Mexico," and that this conduct constitutes Gross using force pursuant to U.S.S.G. § 2P1.1(b)(1).  Objections at 2 (quoting PSR ¶ 17, at 6).  To support this conclusion, the United States contends that "the two officers involved in the shooting -- Lieutenant Richard Lopez and Deputy Carlos Valenzuela, both of the Socorro County Sheriff's Office -- both stated during videotaped interviews that a man in a 'black muscle shirt' (also referred to as a 'black tank top') shot at them unprovoked on the night of the incident."  Objections at 5 (quoting Socorro Incident Report at 70, 73-74).  The United States

bolsters this conclusion by stating that "lapel footage from the night of the shooting shows Mr. Gross wearing a black muscle shirt." Objections at 5. On December 21, 2021, the Court held a hearing on the United States' Opposed Eighth Motion in Limine and Notice of Intent to Admit Evidence Under Federal Rule of Evidence 404(b)(2) and as *Res Gestae* Evidence, filed December 11, 2012 (Doc. 60), during which the United States attested that it could bring an officer to testify at Gross' trial that Gross is the person who shot at officers in the Socorro shooting, see Draft Transcript of Hearing at 36:5-8 (taken December 21, 2021)(Court, White)("Tr.")[4]("Court: Do you have any officer that's going to be able to say Mr. Gross is the one that shot? Mr. White: We do, Your Honor."). Gross did not go to trial, however, so the United States has not presented sworn testimony by an officer involved in the shooting identifying Gross as the shooter. The Court concludes, however, that the United States proves by a preponderance of the evidence that Gross shot at officers. Both Richard and Valenzuela identify a man in a black muscle shirt as a person who shot at officers. See Socorro Incident Report at 70-71, 73-74. Their statements have been consistent, and they have repeated them; there is no sound reason to think that them being under oath and in court would be different than what they put in their police reports. Additionally, a photograph of Gross from the crime scene shows him wearing a black muscle shirt. See Gross Photo. at 1. Consequently, the Court concludes that Gross used force during his escape, and therefore, the Court will apply U.S.S.G. § 2P1.1(b)(1)'s 5-level enhancement.

**IT IS ORDERED** that the United States' Objection to the Presentence Investigation Report and Sentencing Memorandum, filed April 6, 2022 (Doc. 109), is sustained.

---

[4]The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version. Any final transcript may contain slightly different page and/or line numbers.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Fred J. Federici
  United States Attorney
Linda Mott
Stephen A. White
  Assistant United States Attorneys
United States Attorney's Office
Albuquerque, New Mexico

*Attorneys for the Plaintiff*

Margaret Katze
  Federal Public Defender
Dennis J. Candelaria
Buck T. Glanz
  Assistant Federal Public Defender
Federal Public Defender's Office
Albuquerque, New Mexico

*Attorneys for the Defendant*